**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**SIDNEY A. LAUVER,**

      Plaintiff,

**v.**                            **Civil Action No. 2:08-CV-87
(MAXWELL)**

**MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,**

      Defendant.

## ORDER ACCEPTING OPINION/REPORT AND RECOMMENDATION

The above-styled social security appeal was instituted in this Court on August 27, 2008, with the filing of a Complaint by the plaintiff, Sidney A. Lauver.   In his Complaint, the plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of his denial of disability benefits under the Social Security Act by the Defendant, the Commissioner of the Social Security Administration.   The Answer of the defendant was filed on April 3, 2009.

On May 1, 2009, a Motion For Summary Judgment and Brief In Support thereof were filed on behalf of the plaintiff, and on June 1, 2009, a Motion For Summary Judgment and Brief In Support thereof were filed on behalf of the defendant.   Additionally, on June 15, 2009, the plaintiff filed a Response To Defendant's Motion For Summary Judgment.

In his Motion For Summary Judgment, the plaintiff makes three arguments: first, that the Administrative Law Judge ("ALJ") erred by failing to properly identify and consider the plaintiff's correct severe impairment at step two of the sequential evaluation process; second, that the ALJ erred by failing to perform an appropriate credibility analysis as required by SSR 96-7p; and, third, that the ALJ erred by failing to correctly consider the opinion of his treating orthopedic surgeon, P. Kent Thrush, MD, in accordance with the law.

In his Motion for Summary Judgment, the defendant contends that substantial evidence supports the ALJ's finding that the plaintiff was not disabled within the meaning of the Social Security Act; that the ALJ properly evaluated the plaintiff's impairments at step two of the sequential evaluation process; that the ALJ properly evaluated the plaintiff's complaints of pain and limitations and reasonably concluded that the plaintiff was not entirely credible; and that the ALJ properly weighed Dr. Thrush's opinion with the medical evidence of record.

The case was referred to United States Magistrate Judge James E. Seibert in accordance with Rule 83.12 of the Local Rules of General Practice and Procedure. On September 29, 2009, Magistrate Judge Seibert entered a Report And Recommendation ("R&R") wherein he recommended that the plaintiff's Motion For Summary Judgment be denied and that the defendant's Motion For Summary Judgment be granted. Specifically, Magistrate Judge Seibert found that the ALJ properly identified and considered the plaintiff's severe impairments at step two of the sequential evaluation process; that the ALJ properly evaluated the plaintiff's complaints of pain and limitations and properly assessed his credibility; and that the ALJ properly considered the opinion of Dr. Thrush, the plaintiff's treating orthopedic surgeon.

Magistrate Judge Seibert's R&R expressly directed the parties, in accordance with 28 U.S.C. §636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten days after being served with a copy of said R&R. Said R&R further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

The plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge were filed on October 9, 2009. In his Objections, the plaintiff objects to the Magistrate Judge's ruling with regard to each of his three claims of error on appeal.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which objection is made. The Court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the Magistrate Judge as to those portions of the findings or recommendation to which no objections are made. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985).

After reviewing Magistrate Judge Seibert's R&R; the plaintiff's Objections thereto; and the entire record in this matter, this Court finds, for the reasons fully addressed below, that it is appropriate to accept said R&R in full; to grant the defendant's Motion For Summary Judgment; and to deny the plaintiff's Motion For Summary Judgment.

I.      **ALJ's Failure To Properly Identify And Consider The Correct Severe Impairment At Step Two**

In his April 10, 2008, decision, the ALJ made the following finding at step two of the sequential evaluation process:

> The claimant has the following severe impairments: mild degenerative disc disease at L4-5, and at L5-S1, with grade II spondylolisthesis of L5 on S1, major depressive disorder NOS; and borderline intellectual functioning (20 CFR 404.1520©).

(Tr. 22).

The plaintiff objects to the Magistrate Judge's determination that, in making the foregoing finding at step two, the ALJ properly considered his severe impairments. In this

regard, the plaintiff alleges that the Magistrate Judge failed to address any of his specific arguments with regard to this issue, relying instead on his "own incorrect medical opinion as support for the ALJ's mild finding." (Doc. 21 at 2).

The plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to properly identify and consider the correct severe impairment. In this regard, the plaintiff contends that the ALJ incorrectly identified his impairment as "mild" degenerative disc disease when, in fact, Dr. P. Kent Thrush, his treating orthopedic surgeon, had characterized his impairment as "advanced." The plaintiff speculates that the ALJ derived the "mild" characterization of his degenerative disc disease from the following statement made by Dr. Thrush after viewing the results of an April 6, 2007, MRI of the plaintiff's spine:

> I reviewed his MRI: He has degenerative spondylolisthesis at L5 on S1. He has disc bulging of L4-L5 and L5-S1. No major nerve root compression, disc bulge or herniation at L4-L5 on the left but it is pretty mild. No major spinal stenosis. He has a lot of back pain, however.

(Tr. 191).

According to the plaintiff, while the disc bulge or herniation at L4-L5 on his left side may have been mild, the ALJ chose to ignore the fact that the rest of the foregoing excerpt indicates that "the overall condition of Mr. Lauver's lumbar spine was "advanced" to the point of justifying a lumbar fusion." (Doc. 16 at 5). The plaintiff argues that the ALJ's error in incorrectly characterizing his impairment as "mild" at step two of the sequential evaluation process "infected the remainder of his decision at every subsequent step." (Doc. 16 at 4).

In his response to the plaintiff's argument that the ALJ erred at step two by

mischaracterizing his impairment as mild, the defendant argues that the medical evidence "overwhelmingly supports the ALJ's finding that plaintiff has an impairment diagnosed as mild degenerative disc/joint disease with grade II spondylolisthesis." (Doc. 18 at 8). The defendant further contends that, while the ALJ recognized that Dr. Thrush had stated that the plaintiff has a "pretty bad back" and "an advanced degenerative problem in the back," the ALJ had correctly determined that Dr. Thrush's opinion was unsupported by his own objective clinical findings and inconsistent with the record as a whole. (Id.). Finally, the defendant asserts that, even if one assumes for the sake of argument that the ALJ should have removed the adjective "mild" when referencing the plaintiff's back impairment, remand on this basis would be inappropriate because the ALJ accounted for all of the limitations resulting from the plaintiff's back impairment in formulating his RFC. In this regard, the defendant relies on case law stating that, even when an ALJ errs, remand is inappropriate where the ALJ would have reached the same result notwithstanding the error. (Doc. 18 at 9).

In his R&R, the Magistrate Judge addressed the plaintiff's first contention of error by stating that he "agrees with the ALJ's assertion that Claimant has a mild degenerative disc disease." (Doc. 20 at 24). Referencing excerpts from specific portions of medical records contained in the record, the Magistrate Judge found that "there is more than a scintilla of evidence supporting the ALJ's characterization of Claimant's degenerative disc disease as mild; therefore, the ALJ did not err in his assessment." (Id.).

In determining whether a claimant is disabled, the Administrative Law Judge follows a sequential five-step process outlined in 20 C.F.R. § 416.920(a)(4), which provides as follows:

The five-step sequential evaluation process.  The sequential evaluation process is a series of five "steps" that we follow in a set order.  If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.  If we cannot find that you are disabled or not disabled at a step, we go on to the next step.  Before we go from step three to step four, we assess your residual functional capacity.  (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and at step five when we evaluate your claim at these steps.  These are the five steps we follows:

(I) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (See paragraph (b) of this section.)

(ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (See paragraph © of this section.)

(iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled.  (See paragraph (d) of this section.)

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (See paragraph (f) of this section and § 416.960(b).)

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will

find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. (See paragraph (g) of this section and § 416.960©)

This Court has previously found that it is not error at step two of the sequential evaluation process for an ALJ to find that a claimant has only one severe impairment when there is substantial evidence of other impairments in the record, so long as the ALJ considers the combined effect of all of the claimant's impairments later in the sequential evaluation process. In its March 30, 2010, opinion in the case of **Mauzy v. Astrue**, 2:08 CV 75, this Court found the opinion of the United States Court of Appeals for the Tenth Circuit in the case of **Brescia v. Astrue**, 287 F.Appx. 626 (2008), persuasive with regard to this issue. In the **Brescia** case, the Tenth Circuit Court of Appeals held as follows:

> "We can easily dispose of" an argument that the ALJ should have found additional impairments to be severe because "[t]he ALJ . . . made an explicit finding that [the claimant] suffered from severe impairments. That was all the ALJ was required to do in that regard." **Oldham v. Astrue**, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923; *see also id.* §§ 404.1525(e), 416.945(e); **Maziarz v. Sec'y of Health & Human Servs.**, 837 F.2d 240, 244 (6th Cir. 1987).

> As in **Oldham**, Ms. Brescia's true quarrel is not with the step-two findings concerning which of her impairments are severe, but with the step-four and step-five findings concerning her RFC and her ability to do any work. *See Oldham*, 509 F.3d at 1256-57. Notwithstanding the ALJ's earlier statement that her thoracic outlet syndrome was "not further considered," Aplt.App. at 23, in determining her RFC, he considered those effects of Ms. Brescia's sleep apnea, obesity, degenerative

> disk disease, and hand and arm pain that were supported in
> the medical record, in conjunction with the impairments that he
> deemed severe.  *See id.* at 24-26.  We find no reversible error.

*Id.* at 629 (2008).  Applying the Tenth Circuit Court of Appeals' rationale in the **Brescia**

case to the ALJ's step two finding in the **Mauzy** case, this Court found that it was not error

for the ALJ to find that the plaintiff therein had only one severe impairment, namely bipolar

disorder, even though the record contained substantial evidence of other severe

impairments such as adjustment disorder with mixed disturbance of emotion and conduct;

acute stress disorder; post traumatic stress disorder; major depressive disorder - recurrent;

personality disorder NOS (paranoid traits, narcissistic traits, histrionic traits, borderline

traits); and post traumatic stress disorder due to childhood sexual abuse.  In this regard,

the Court held:

> In summary, this Court believes that, in finding at step two of
> the sequential evaluation process that the plaintiff had one
> severe impairment, bipolar disorder, the ALJ in this matter
> complied with all he was required to do at step two of the
> sequential evaluation process.  This Court finds that it was not
> reversible error for the ALJ not to designate any of the
> plaintiff's other mental conditions as severe or not severe in
> light of the fact that he did, during later steps of the sequential
> evaluation process, consider the combined effect of all of the
> plaintiff's impairments.

**Mauzy,** 2:08 CV 75 at 10.

The Court believes that its analysis from the **Mauzy** case can and should be taken

one step farther.  If it is not reversible error for an ALJ to fail to list all of a claimant's severe

impairments at step two of the sequential evaluation process, so long as all of said

impairments and the limitations imposed by them are considered in formulating the RFC,

then it follows that it is not reversible error for the ALJ to mischaracterize the severity of a claimant's impairment at step two of the sequential evaluation process, so long as all of the limitations posed by the actual impairment are considered in formulating the RFC.

The defendant asserts, and this Court agrees, that the following RFC formulated for the plaintiff by the ALJ accounted for all of the limitations arising from the plaintiff's back impairment for which there was support in the record:

> After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: he is able to perform a range of light work; requires a sit/stand option; can perform postural movements occasionally except cannot climb ladders, ropes or scaffolds; should walk on level and even surfaces; should do no overhead lifting or carrying; should not be exposed to temperature extremes or hazards; should work in a low stress environment with no production line type of pace or independent decision making responsibilities; is limited to unskilled work involving only routine and repetitive instructions and tasks; and should have no interaction with the general public and no more than occasional interaction with co-workers and supervisors.

(Tr. 24). As noted by the defendant, the ALJ's RFC is consistent with the opinions of Drs. Franyutti and Osborne. In his May 30, 2007, Physical Residual Functional Capacity Assessment, Fulvio Franyutti, MD, found that the plaintiff could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit (with normal breaks) for a total of about six hours in an eight-hour workday; could engage in unlimited pushing and/or pulling (including operation of hand and/or foot controls); could occasionally climb ramp/stairs but never climb ladder/ropes/scaffolds; could occasionally balance, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to extreme cold, vibration,

and hazards (machinery, heights, etc.) but could have unlimited exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 194-201). On August 1, 2007, Cindy Osborne, DO, stated that she had reviewed all the pertinent medical evidence in the plaintiff's file and affirmed Dr. Franyutti's May 30, 2007, Assessment as written. (Tr. 225).

A careful review of the physical limitations found by Dr. Franyutti and affirmed by Dr. Osborne and those limitations contained in the RFC formulated by the ALJ reveals that the ALJ did, in fact, include all of said limitations. Accordingly, the Court finds that it was not reversible error for the ALJ to mischaracterize the severity of the plaintiff's back impairment at step two of the sequential evaluation process since he did, in fact, include all of the limitations posed by the plaintiff's back impairment, when he formulated the plaintiff's RFC.

## II. ALJ's Failure To Perform An Appropriate Credibility Analysis

In his April 10, 2008, decision, the ALJ found that the plaintiff was "not entirely credible" and supported this finding as follows:

> The claimant was not entirely credible, based on some of his statements and other evidence in the record. At the hearing, he engaged in extremely exaggerated pain behavior, which was, in the opinion of the undersigned, transparently symptom magnification, especially considering the relatively benign clinical signs and image findings reported by Dr. Thrush. Also, his use of a cane was not prescribed, but was given to him by his sister according to his testimony. The claimant also was able to drive himself to the hearing. Furthermore, the claimant appears to have a significant secondary gain motivation to exaggerate his subjective complaints, reporting in a concurrently filed Title XVI claim that he would only become eligible for his union pension of $2200 per month if he were

also awarded Social Security disability. Even Dr. Thrush noted on April 18, 2007, that the claimant was going to "check with his union to see how much he will get paid on retirement." Dr. Thrush noted earlier on April 2, 2007, at a time when the claimant was performing "heavy construction work," that the claimant's chronic back pain was "off and on." On the same date, the claimant had mostly normal range of motion in the hips, knees and ankles, which is not consistent with his reports of severe pain in these joints. He had positive sciatic type symptoms and a positive straight leg raise on the left, but was negative on the right and had no motor or sensory deficits. As discussed earlier, lumbar imaging studies showed mild lumbar disc disease with moderate spondylolisthesis of L5 on S1. (Exhibit 1F).

The claimant also had a significant treatment gap of over two years with his primary care physician at the Manchin Clinic from June 2005 to September 11, 2007, which is one week after he filed his request for hearing, which is also not consistent with his reports of debilitating pain since at least April 2007, and again evidences a significant secondary gain motivation. However, even the reports from the Manchin clinic showed no significant abnormal objective clinical signs on physical examination or imaging findings, reporting primarily the claimant's subjective complaints of the "same old stuff" that appear to be significantly exaggerated. (Exhibit 8F).

For the foregoing reasons, the Administrative Law Judge finds the claimant not to be entirely credible and does not accept his subjective statements concerning his symptoms and limitations. The claimant has medical impairments that could reasonably be expected to cause some of the symptoms described, and the Administrative Law Judge believes that the claimant does experience some back pain and depression from time to time, but not to the frequency and severity alleged. In view of this determination concerning the claimant's credibility, the Administrative Law Judge does not accept medical findings or opinions that are based solely or primarily on the claimant's subjective complaints, which appears to be the case with Dr. Thrush's report on November 1, 2007, discussed earlier. (Exhibit 7F).

(Tr. 24-25).

The plaintiff objects to the Magistrate Judge's determination that the ALJ properly considered his credibility. With regard to this issue, the plaintiff points out that, even though the Magistrate Judge agreed with the ALJ that the plaintiff was exaggerating or magnifying his symptoms, he failed to cite to a single source in the record that suggested this was the case. The plaintiff asserts that, in response to his arguments, the Magistrate Judge simply recited "many of the ALJ's statements without conducting any actual analysis of whether the statements are actually true or relevant." (Doc. 21 at 21). On this second issue, the plaintiff also contends that the Magistrate Judge was unsuccessful in his attempts to distinguish this case from the case of *Lower v. Comm. of Social Security*, 2:04 CV 57 (N.D. W.V. 2007), and that the Magistrate Judge failed to address the plaintiff's argument that, in finding him not to be credible, the ALJ used the improper method of adjudication commonly referred to as "sit and squirm jurisprudence."

In response to the plaintiff's contention that the ALJ erred in finding him not to be entirely credible, the defendant asserts that the ALJ properly conducted the credibility analysis required by 20 C.F.R. §§ 404.1529; 416.929 and *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In this regard, the defendant argues that the ALJ found, at the first prong, that the plaintiff had a medically determinable impairment that could reasonably be expected to cause the symptoms alleged but also found, at the second prong, that the plaintiff was not entirely credible as to the intensity and persistence of his symptoms. The defendant asserts that the ALJ properly based his determination that the plaintiff was not entirely credible on a number of factors that were fully supported by the evidence in the record. First, the defendant argues that the ALJ properly relied on his finding that the

plaintiff's clinical findings and imaging studies did not support his complaints of debilitating pain and symptoms. Second, the defendant asserts that it was proper for the ALJ to consider the fact that, for over a two-year period, the plaintiff did not see his primary physician; did not seek treatment at an emergency room or free clinic; did not attend physical therapy; and did not attend a pain management clinic or use a TENS unit for pain. Third, the defendant asserts that the ALJ properly considered the plaintiff's wide range of daily activities. Fourth, and finally, the defendant contends that, in assessing the plaintiff's credibility, the ALJ properly considered the opinions of Dr. Franyutti, Dr. Osborne and Dr. Capage, each of which supported his decision not to fully credit the plaintiff's subjective symptoms.

The defendant argues that the plaintiff's reliance on Senior District Court Judge Robert E. Maxwell's opinion in the case of ***Lower v. Comm. of Social Security***, 2:04 CV 57 (N.D. W.V. 2007), is misplaced because, in the matter now before the Court, the ALJ supported his credibility analysis with substantial evidence. Finally, citing ***Shively v. Heckler***, 739 F.2d 987, 989-90 (4th Cir. 1984), the defendant notes that, because the ALJ had the opportunity to observe the plaintiff's demeanor, his observations concerning the plaintiff's credibility is entitled to great weight.

In his R&R, Magistrate Judge Seibert found that the ALJ properly followed the two-step analysis for assessing credibility outlined in ***Craig v. Chater***, 76 F.3d 585 (4th Cir. 1996). In this regard, the Magistrate Judge noted that the ALJ found that the plaintiff had medical impairments that could reasonably be expected to cause some of the symptoms described and then, after weighing the plaintiff's testimony with all of the evidence, found

that the plaintiff did "experience some back pain and depression from time to time, but not to the frequency and severity alleged." According to the Magistrate Judge, the ALJ's credibility determination was based on a variety of facts and observations, including his determination that the plaintiff had exaggerated his pain during the hearing in light of the "relatively benign clinical signs and imaging findings reported by Dr. Thrush;" the fact that there was a treatment gap of over two years with the plaintiff's primary care physician at the Manchin Clinic; and lifestyle evidence that the plaintiff had never been prescribed a cane and was able to drive himself to the hearing.

Like the defendant, the Magistrate Judge also found that the plaintiff's reliance on Judge Maxwell's opinion in **Lower v. Comm. of Social Security**, 2:04 CV 57 (N.D. W.V. 2007), was misplaced in light of the fact that, in the **Lower** case, Judge Maxwell found that there was no medical evidence in the record to support the ALJ's negative credibility finding. Additionally, the Magistrate Judge found that the plaintiff's reliance on cases addressing "sit and squirm jurisprudence" was also misplaced. Addressing the case of **Jenkins v. Sullivan**, 906 F.2d 107 (4th Cir. 1990), the Magistrate Judge noted that, in that case, the Fourth Circuit found that the ALJ had erred by examining only the claimant's physical condition at the hearing. The Magistrate Judge contended that the matter now before the Court was easily distinguishable from **Jenkins v. Sullivan**, in light of the fact that, here, the ALJ had examined the plaintiff's subjective complaints in light of the medical evidence and concluded that the medical evidence did not support the plaintiff's subjective complaints.

In **Craig v. Chater**, 76 F.3d 585 (4th Cir. 1996), the United States Court of Appeals

14

for the Fourth Circuit discussed the required procedure for properly evaluating the credibility of a claimant as follows:

> Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*
>
> . . .
>
> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).

*Id.* at 594-595 (citations omitted)(emphasis in original).

This Court agrees with the defendant and Magistrate Judge Seibert that substantial evidence supports the ALJ's decision to discredit the plaintiff's subjective complaints. In so concluding, this Court finds that the ALJ properly applied the foregoing two-part test in *Craig*. During the first step of the *Craig* analysis, the ALJ found that the plaintiff had "medical impairments that could reasonably be expected to cause some of the symptoms described." (Tr. 25). At the second step of the *Craig* analysis, the ALJ found, however, that "the claimant does experience some back pain and depression from time to time, but not to the frequency and severity alleged." (*Id.*).

The ALJ in the matter now before the Court thoroughly explained his reasoning for discrediting the plaintiff's testimony. As the defendant asserts, the ALJ relied on a number of factors that were fully supported by the evidence in the record. First, the ALJ found that,

15

during the hearing, the plaintiff "engaged in extremely exaggerated pain behavior, which was, in the opinion of the undersigned, transparently symptom magnification . . . . " (Tr. 24). The plaintiff has argued that the foregoing statement represents the ALJ's utilization of the type of "sit and squirt jurisprudence" that the Courts have found impermissible. In an unpublished opinion in the case of **Jenkins v. Bowen**, the United States Court of Appeals for the Fourth Circuit did recognize that discounting a claimant's testimony about pain based on a claimant's behavior during the hearing is inappropriate for an ALJ and generally condemned. 819 F.2d 1138 (4th Cir. 1987). While the Court agrees that the plaintiff's behavior during the hearing was certainly one factor considered by the ALJ in making the determination that the plaintiff was not entirely credible, it was not, by any means, the only factor. In this regard, the Court agrees with the Magistrate Judge that the **Jenkins** case is distinguishable from the matter now before the Court.

In addition to considering the plaintiff's behavior during the hearing, the ALJ also considered the fact that, for over a two-year period, the plaintiff did not see his primary physician; did not seek treatment at an emergency room or free clinic; did not attend physical therapy; and did not attend a pain management clinic or use a TENS unit for pain. (Tr. 25). The ALJ noted, in this regard, that the plaintiff had not returned to his primary care physician at the Manchin Clinic until one week after he filed his request for a hearing. (*Id.*). Additionally, the ALJ considered the plaintiff's daily activities, including the fact that he was able to drive himself to the hearing. (Tr. 24).

In concluding that the plaintiff was not entirely credible, the Court finds, however, that the ALJ relied primarily on the objective medical evidence. In this regard, the ALJ referenced an April 2, 2007, report wherein the plaintiff's treating orthopedic surgeon, Dr.

Thrush, noted the following with regard to the plaintiff's condition:

> He has chronic back pain off and on. He does heavy construction work. Reflexes are 1+ in knees and ankles. He has normal strength of hip flexion, hip extension, hip abduction, hip adduction, knee flexion, knee extension, ankle dorsiflexion, ankle planta flexion and extensor hallucis longus. No history of bowel or bladder difficulty. He says it is getting increasingly worse; mostly pain down the left leg the level of the calf. He does have positive sciatic type symptoms, positive straight leg raising on the left to 60° and negative on the right.
>
> . . .
>
> Pulses are normal. No bowel or bladder difficulty. No motor or sensory deficits. . . .

(Tr. 193). Noting that the plaintiff was still doing heavy construction work at the time, the ALJ found that the plaintiff's condition, as reported by his treating physician, was "not consistent with his reports of severe pain in these joints." (Tr. 24). The ALJ also relied on the fact that an April 6, 2007, MRI Report from the Department of Radiology at Fairmont General Hospital (Tr. 192) which indicated that the plaintiff had "mild lumbar disc disease with moderate spondylolisthesis of L5 on S1" was inconsistent with the plaintiff's subjective complaints of pain. (Tr. 24). Finally, the ALJ referenced the fact that physician notes contained in the plaintiff's medical records from the Manchin Clinic (Tr. 227 - 232) indicated that the plaintiff "showed no significant abnormal objective clinical signs on physical examination or imaging findings, reporting primarily the claimant's subjective complaints of the 'same old stuff' that appear to be significantly exaggerated." (Tr. 25). The Court would note that It is the foregoing substantial medical evidence supporting the ALJ's credibility finding that distinguishes the matter now before the Court from the case of **Lower v. Comm. Of Social Security**, 2:04 CV 57 (N.D.W.V. 2007), which the plaintiff argues

should be dispositive here.  In the ***Lower*** case, Judge Maxwell found that there was no medical evidence in the record to support the ALJ's negative credibility finding.  This is simply not the case in the matter now before the Court.

Thus, having carefully reviewed the entire record in this matter, the Court finds that the ALJ properly assessed the plaintiff's credibility, utilizing the two step process set forth in ***Craig v. Chater***.  The Court further finds that there was substantial evidence in the record to support the ALJ's determination that the plaintiff was not entirely credible.

**III.     ALJ's Failure To Correctly Consider The Opinion Of The Plaintiff's Treating Orthopedic Surgeon, P. Kent Thrush**

In his decision, the ALJ addressed the opinion of P. Kent Thrush, the plaintiff's treating orthopedic surgeon, as follows:

> As discussed earlier, the Administrative Law Judge does agree with Dr. Thrush's assessment that the claimant does have some degree of significant limitation due to his permanent and severe lumbar impairment, but the objective medical evidence does not suggest a totally disabling condition.  Insofar as Dr. Thrush opines that the claimant is unable to hold any gainful employment and is disabled,  such an opinion is entitled to no controlling weight or special significance because it is on an issue reserved to the Commissioner.  20 CFR § 404.1527(e) and Social Security Ruling 96-5p.  However, the medical evidence of record does support Dr. Thrush's assessment dated May 9, 2007, written on the doctor's prescription pad that the claimant is unable to perform his past work as a drywall finisher due to his lumbar impairment.  (Exhibit 1F, p 1).  This assessment is also consistent with and supported by the residual functional capacity assessment by the reviewing physician for the state agency dated May 30, 2007 (Exhibit 2F), and affirmed by another reviewing physician on August 1, 2007 (Exhibit 6F), which also limited the claimant to a range of light exertional work.  This assessment is given great weight since it is well reasoned, supported by the medical evidence of record, and because the reviewing physicians have an

18

understanding of the disability programs and their evidentiary requirements. However, giving the claimant the maximum benefit of the doubt even though he is not entirely credible and appears to be engaging in significant symptom magnificent [sic] for secondary gain purposes, he has been provided a sit/stand option with walking on level and even surfaces, and no overhead lifting or carrying.

(Tr. 25).

The plaintiff argues that the ALJ erred by failing to correctly consider the opinion of Dr. Thrush. The plaintiff takes the position that the ALJ rejected Dr. Thrush's opinion for two reasons, both of them improper. According to the plaintiff, the ALJ rejected Dr. Thrush's opinion because he opined that the plaintiff was permanently disabled and, thus, spoke to an issue reserved to the Commissioner. Additionally, the plaintiff contends that the ALJ rejected Dr. Thrush's opinion because it was based solely or primarily on his subjective complaints which the ALJ had already found not to be entirely credible.

With regard to the ALJ's first basis for rejecting Dr. Thrush's opinion, the plaintiff points out that, pursuant to SSR 96-2p, a treating physician's opinion on issues reserved to the Commissioner can never be ignored. For that reason, the plaintiff argues that, rather than merely stating that Dr. Thrush's opinion was not entitled to controlling weight or special significance since it was on an issue reserved to the Commissioner, the ALJ should have continued to determine exactly what weight his opinion was entitled to. (Doc. 16 at 10). In this regard, the plaintiff contends that if the ALJ had any questions about Dr. Thrush's opinion he should have recontacted him.

The plaintiff argues that the ALJ's second basis for rejecting Dr. Thrush's opinion, that it was based solely or primarily on his subjective complaints, has also been held improper. In this regard, the plaintiff references the opinion of the Tenth Circuit in

***Langley v. Barnhart***, 373. F.3d 1116 (10th Cir.2004), where the Court stated as follows:

> '[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*' ***McGoffin v. Barnhart***, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original).

***Id.*** at 1121.

Additionally, the plaintiff points out that nowhere in the five-step analysis for evaluating treating source opinions set forth by the Fourth Circuit in ***Hines v. Barnhart***, 453 F.3d 559, 563 (4th Cir. 2006), does it call for an ALJ to consider a claimant's credibility when determining what weight to afford the opinion of his or her treating physician.

The defendant contends that the ALJ reasonably found Dr. Thrush's opinion was not entitled to significant weight because it was based primarily on the plaintiff's subjective complaints, which complaints the ALJ had already found not to be entirely credible. Additionally, the defendant contends that it was entirely proper for the ALJ to afford Dr. Thrush's November 2007, opinion that the plaintiff was permanently disabled little weight since this was an opinion on an issue reserved to the Commissioner. Finally, the defendant contends that the ALJ properly discounted Dr. Thrush's opinion of disability because it was inconsistent with other probative evidence of record, namely, the opinions of Dr. Franyutti and Dr. Osborne, both of whom found that the plaintiff retained the functional capacity to perform a range of light work, and the evidence that the plaintiff was still able to perform multiple activities.

In his September 29, 2009, R&R, the Magistrate Judge recognized that, pursuant to SSR 96-5p, the opinion of any medical source on issues reserved to the Commissioner

may never be ignored, but pointed out that treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. (Doc. 20 at 30). The Magistrate Judge further found that the plaintiff is incorrect in his assertion that the ALJ has a duty to recontact treating sources when they render opinions on issues reserved to the Commissioner. In this regard, the Magistrate Judge noted that, pursuant to SSR 96-5p, recontact of a treating source is only required when "the bases for such opinions are not clear." Finally, the Magistrate Judge found that the plaintiff is incorrect in his assertion that the ALJ improperly rejected Dr. Thrush's opinions because they were based on his subjective complaints. With regard to this issue, the Magistrate Judge asserted that the case relied on by the plaintiff, *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004), is distinguishable from the case now before the Court in two ways: first, because the ALJ did not reject Dr. Thrush's opinion entirely, and, second, because the ALJ did not reject Dr. Thrush's opinion solely based on his determination that the plaintiff was not entirely credible. In this regard, the Magistrate Judge asserted that the following excerpt from his decision shows that the ALJ did not reject Dr. Thrush's opinion based solely on the plaintiff's complaints but also based on his finding that Dr. Thrush's own report showed the lack of objective medical findings to support his conclusions:

> [T]he Administrative Law Judge has considered the assessment by orthopedic surgeon P. Kent Thrush, M.D., dated November 1, 2007, which stated that the claimant has a 'pretty bad back' and 'an advanced degenerative problem in the back' but objectively reported no abnormal neurological deficits on physical examination, noting only that imaging studies showed a moderate grade II spondylolisthesis of L5 on S1 without any 'major disc herniation' shown on a lumbar MRI, and that the claimant takes only 'occasional' Darvocet for pain with no surgery recommended.

(Tr. 23).

SSR 96-5p expressly provides that the final responsibility for deciding whether a claimant is disabled is reserved to the Commissioner, and the entire pertinent part provides as follows:

> Under 20 CFR 404.1527(e) and 416.927 (e), some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability. The following are examples of such issues:
>
> 1.  Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any Impairment(s) in the listings;
> 2.  What an individual's RFC is;
> 3.  Whether an individual's RFC prevents him or her from doing past relevant work;
> 4.  How the vocational factors of age, education, and work experience apply; and
> 5.  Whether an individual is "disabled" under the Act.
>
> The regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner.
>
> Nevertheless, our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.
>
> However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an

individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

However, opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

Based on the foregoing express language of SSR 96-5p, the ALJ was not required to give Dr. Thrush's opinion controlling weight or special significance. Nevertheless, the foregoing makes it equally clear that the ALJ was not entitled to ignore Dr. Thrush's opinion simply because it spoke to an issue reserved to the Commissioner. What the ALJ was required to do was "evaluate all evidence in the case record to determine the extent to which the opinion [of Dr. Thrush] is supported by the record." SSR 96-5p.

The United States Court of Appeals for the Fourth Circuit has long held that "'[t]he opinion of a claimant's treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence. *See, e.g.*, **Mitchell v. Schweiker**, 699 F.2d 185 (4th Cir. 1983)." **Evans v. Heckler**, 734 F.2d 1012, 1015 (4th Cir. 1984). Additionally, there is in this Circuit a long-standing five-step analysis that an ALJ must use when considering treating source opinions. As recently reaffirmed by the Fourth Circuit Court of Appeals in the case of **Hines v. Barnhart**, the five steps that an ALJ must use are as follows:

The ALJ was obligated to evaluate and weigh medical opinions

23

> "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."

453 F.3d 559 at 563 (2006).

Having carefully reviewed the entire record in this matter, the Court agrees with the Magistrate Judge and the defendant that the ALJ did not improperly reject Dr. Thrush's opinion but considered it following the requirements set forth in SSR 96-5p and the process set forth by the Fourth Circuit Court of Appeals in **Hines v. Barnhart**.

The Court believes it is important to note, first, that the ALJ did not entirely reject Dr. Thrush's opinion. In this regard, he stated that, "[t]he Administrative Law Judge does agree with Dr. Thrush's assessment that the claimant does have some degree of significant limitation due to his permanent and severe lumbar impairment, but the objective medical evidence does not suggest a totally disabling condition." (Tr. 25). The ALJ found that the medical evidence of record supported Dr. Thrush's opinion that the plaintiff could not perform his past work due to his lumbar impairment and, in this regard, expressly referenced the May 30, 2007, residual functional capacity assessment performed by Dr. Franyutti (Tr. 194 - 201). As previously noted herein, Dr. Franyutti found that the plaintiff could occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit (with normal breaks) for a total of about six hours in an eight-hour workday; could engage in unlimited pushing and/or pulling (including operation of hand and/or foot controls); could occasionally climb ramp/stairs but never climb ladder/ropes/scaffolds;

could occasionally balance, stoop, kneel, crouch, or crawl; should avoid concentrated exposure to extreme cold, vibration, and hazards (machinery, heights, etc.) but could have unlimited exposure to extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 194-201). On August 1, 2007, Cindy Osborne, DO, stated that she had reviewed all the pertinent medical evidence in the plaintiff's file and affirmed Dr. Franyutti's May 30, 2007, Assessment as written. (Tr. 225).

On November 1, 2007, however, Dr. Thrush opined that, "[c]ertainly this problem is permanent. I think that is one of the reasons that he was denied Social Security Disability. They thought he would get better in 6-12 months and certainly that is not going to happen. I think this is a permanent condition and as time goes by, it is going to get worse." (Tr. 226). The ALJ considered Dr. Thrush's November 1, 2007, opinion but afforded it little weight.

In affording Dr. Thrush's November 1, 2007, opinion little weight, the ALJ indicated that, "[i]nsofar as Dr. Thrush opines that the claimant is unable to hold any gainful employment and is disabled, such an opinion is entitled to no controlling weight or special significance because it is on an issue reserved to the Commissioner. 20 CFR § 404.1527(e) and Social Security Ruling 96-5p." (Tr. 25). Here the ALJ accurately recited and applied the law with regard to the opinion of a treating physician on an issue reserved to the Commissioner. Pursuant to 20 C.F.R. § 404.1527(e) and Social Security Ruling 95-5p, such an opinion must be considered but it is not entitled to controlling weight or special significance.

The ALJ further indicated that Dr. Thrush's November 1, 2007, opinion appeared to be based solely or primarily on the plaintiff's subjective complaints. (*Id.*). As the defendant

notes in his Brief In Support Of His Motion For Summary Judgment, this was not an improper consideration by the ALJ. (Doc. 18 at 13). The controlling Social Security regulations provide for greater weight to be given to a medical opinion supported by relevant evidence, particularly medical signs and laboratory findings. *See* 20 C.F.R. §§ 405.927(d)(3); 416.927(d)(3). Similarly, the United States Court of Appeals for the Fourth Circuit has recognized that a claimant's subjective reports of pain to a physician do not constitute objective medical evidence. In this regard, the Fourth Circuit Court of Appeals held as follows:

> By negative implication, if a physician's opinion is not supported by clinical evidence or it is inconsistent with other substantial evidence, it should be accorded significantly less weight. All Keller gave here was a conclusory opinion based upon Craig's subjective reports of pain. His own medical notes did not confirm his determination of "disability."

***Craig v. Chater***, 76 F.3d 585 at 590 (4th Cir. 1996).

Contrary to the plaintiff's assertions, however, the ALJ did not reject Dr. Thrush's November 1, 2007, opinion based solely on the fact that it spoke to an issue reserved to the Commissioner or the fact that he found it to be based, in large part, on the plaintiff's subjective reports of pain. To the contrary, it is clear to the Court that the ALJ rejected Dr. Thrush's November 1, 2007, opinion primarily because he found it was not supported by Dr. Thrush's own clinical findings or the other objective medical evidence.

The ALJ points out in his decision that, in the same November 1, 2007, report where he opined that the plaintiff was disabled, the ALJ referenced the fact that a recent MRI of the plaintiff's lumbar area "show[ed] degenerative spondylolisthesis of L5 on S1 with bulging at L4-L5 and L5-S1." (Tr. 226). Additionally, as previously noted in that portion of

this Order addressing the ALJ's determination of the Plaintiff's credibility, the ALJ expressly referenced an April 2, 2007, report wherein Dr. Thrush, noted the following with regard to the plaintiff's condition:

> He has chronic back pain off and on. He does heavy construction work. Reflexes are 1+ in knees and ankles. He has normal strength of hip flexion, hip extension, hip abduction, hip adduction, knee flexion, knee extension, ankle dorsiflexion, ankle planta flexion and extensor hallucis longus. No history of bowel or bladder difficulty. He says it is getting increasingly worse; mostly pain down the left leg the level of the calf. He does have positive sciatic type symptoms, positive straight leg raising on the left to 60° and negative on the right.
>
> . . .
>
> Pulses are normal. No bowel or bladder difficulty. No motor or sensory deficits. . . .

(Tr. 193). Noting that the plaintiff was still doing heavy construction work at the time, the ALJ found that the plaintiff's condition, as reported by his treating physician, was "not consistent with his reports of severe pain in these joints." (Tr. 24). The ALJ also relied on the fact that an April 6, 2007, MRI Report from the Department of Radiology at Fairmont General Hospital (Tr. 192) which indicated that the plaintiff had "mild lumbar disc disease with moderate spondylolisthesis of L5 on S1" was inconsistent with the plaintiff's subjective complaints of pain. (Tr. 24). The ALJ additionally referenced the fact that physician notes contained in the plaintiff's medical records from the Manchin Clinic (Tr. 227 - 232) indicated that the plaintiff "showed no significant abnormal objective clinical signs on physical examination or imaging findings, reporting primarily the claimant's subjective complaints of the "same old stuff" that appear to be significantly exaggerated." (Tr. 25). Thus, the Court finds that there was substantial evidence in the record to support the ALJ's rejection

of Dr. Thrush's November 1, 2007, opinion.

Accordingly, this Court finds that the ALJ properly considered the opinion of the plaintiff's treating orthopedic surgeon, P. Kent Thrush, as required by SSR 96-2p and following the five-step analysis utilized by the Fourth Circuit Court of Appeals and set forth in **Hines v. Barnhart**, 453 F.3d 559, 563 (4th Cir. 2006).

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Seibert's September 29, 2009, R&R [Doc. 20] be, and is hereby, **ADOPTED** for the reasons fully set forth above.  Accordingly, it is

**ORDERED** that:

1.      The Plaintiff's Motion For Summary Judgment [Doc. 15] is **DENIED**;

2.      The Defendant's Motion For Summary Judgment [Doc.17] is **GRANTED**; and

3.      The plaintiff's Complaint [Doc. 1] is **DISMISSED** with prejudice and Ordered stricken from the active docket of this Court.

The Clerk of Court is directed to transmit copies of this Order and the Judgment Order to counsel of record.

**ENTER:** March 31, 2010

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE